FILED
2019 SEP 24 PM 5:07
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2019 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOEL ANTONIO VILLEGAS, aka "Junior,"<br>WILLIAM ARIEL MORENO, aka "Wonka,"<br>RONNY RIZO, aka "Rodney,"<br>MARIA ESTHER PONCE, aka "Mary,"<br>JONATHAN ORTIZ, aka "Thiago," "principethiago," and "Johnny,"<br>MILTON AMILCAR PONCE, and<br>OMAR PERALTA, aka "O,"<br>Defendants. | CR No. 19CR00568-AB<br>I N D I C T M E N T<br>[21 U.S.C. § 846: Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances; 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii): Distribution of Cocaine; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (b)(1)(B)(ii): Possession with Intent to Distribute Cocaine; 18 U.S.C. § 2(a): Aiding and Abetting; 21 U.S.C. § 853: Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

[ALL DEFENDANTS]

A. OBJECTS OF THE CONSPIRACY

Beginning on an unknown date, and continuing to on or about July 11, 2018, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants JOEL ANTONIO VILLEGAS, also known as ("aka") "Junior," WILLIAM ARIEL MORENO, aka "Wonka," RONNY RIZO, aka "Rodney," MARIA ESTHER PONCE, aka "Mary," JONATHAN ORTIZ, aka "Thiago," "principethiago," and "Johnny," MILTON AMILCAR PONCE, OMAR PERALTA, aka "O," and others known and unknown to the Grand Jury, conspired with each other to knowingly and intentionally commit the following offenses:

1. To distribute and to possess with intent to distribute at least one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(i);

2. To distribute and to possess with intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii);

3. To distribute and to possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(ii);

4. To distribute and to possess with intent to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(D); and

5. To distribute and to possess with intent to distribute hashish oil containing tetrahydrocannabinol, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(D).

B. MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in substance, as follows:

1. Defendant VILLEGAS would obtain heroin, cocaine, marijuana, and hashish oil containing tetrahydrocannabinol from unindicted conspirators.

2. Defendants VILLEGAS and MILTON PONCE would pick up kilogram quantities of drugs from unindicted co-conspirators.

3. Defendant VILLEGAS would arrange for the sale of kilogram quantities of drugs to customers, including defendants RIZO and MARIA PONCE.

4. Defendants RIZO and MARIA PONCE would redistribute the drugs they bought from defendant VILLEGAS to their customers.

5. Defendant PERALTA would convert cars bought by defendant MORENO into cars with hidden compartments ("trap cars") for use in transporting drugs and drug proceeds.

6. Defendant MORENO would coordinate cross-border caravans so that drug couriers could transport drugs from Mexico into the United States using trap cars.

7. Defendant ORTIZ would distribute drugs from California to customers in other states, including Florida.

C. OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants VILLEGAS, MORENO, RIZO, MARIA PONCE, ORTIZ, MILTON PONCE, and PERALTA, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, including, but not limited to, the following:

1. On or about November 6, 2017, defendant VILLEGAS met with someone he believed was a drug customer, but who was, in reality, an undercover agent ("UC-1"), in Philadelphia; during this in-person meeting, defendant VILLEGAS, using coded language, offered to sell and deliver ten kilograms of cocaine to UC-1.

2. On or about November 6, 2017, using coded language during an in-person meeting, defendant VILLEGAS instructed UC-1 to buy two cell phones for the exclusive purpose of conducting future drug transactions with defendant VILLEGAS without detection by law enforcement.

3. On or about December 5, 2017, using coded language in a telephone conversation, defendant VILLEGAS offered to make ten kilograms of cocaine available to UC-1 in New York.

4. On or about December 19, 2017, using coded language in a telephone conversation, defendant PERALTA advised defendant VILLEGAS that he had located cocaine available for $22,000 per kilogram, and defendant VILLEGAS advised defendant PERALTA that he was buying cocaine from another source for $20,000 per kilogram.

5. On or about December 20, 2017, defendant VILLEGAS shipped marijuana and hashish oil containing tetrahydrocannabinol from Los Angeles, California to Co-Conspirator 1 in Jacksonville, Florida.

6. On or about December 21, 2017, using coded language in a telephone conversation, defendant VILLEGAS advised defendant MORENO not to mail drugs during the holidays because they might be stolen from the delivery stream by seasonal employees.

7. On or about December 22, 2017, using coded language in a telephone conversation, defendant VILLEGAS advised Co-Conspirator 1 that the marijuana and hashish oil containing tetrahydrocannabinol sent by defendant VILLEGAS from Los Angeles, California, was in transit to Co-Conspirator 1 in Jacksonville, Florida.

8. On or about December 23, 2017, using coded language in a telephone conversation, Co-Conspirator 1 advised defendant VILLEGAS that the marijuana and hashish oil containing tetrahydrocannabinol sent by defendant VILLEGAS from Los Angeles, California, had been received by Co-Conspirator 1 in Jacksonville, Florida.

9. On or about December 26, 2017, using coded language in a telephone conversation, defendant VILLEGAS advised Co-Conspirator 1 that commercially shipping, rather than mailing, marijuana and hashish oil better ensured that law enforcement would not intercept the packages and seize the drugs.

10. On or about December 26, 2017, using coded language in a telephone conversation, defendant PERALTA advised defendant VILLEGAS that a car defendant MORENO had brought to defendant PERALTA's auto body shop had plastic parts and lacked sizeable natural voids and so could not be outfitted with a hidden compartment.

11. On or about December 26, 2017, using coded language in a telephone conversation, defendant VILLEGAS instructed defendant PERALTA to direct defendant MORENO not to buy the car that could not be converted into a trap car.

12. On or about December 26, 2017, using coded language in a telephone conversation, defendant PERALTA coordinated the delivery of drug proceeds, including proceeds withdrawn from a trap car's hidden compartment, to defendant VILLEGAS.

13. On or about January 7, 2018, using coded language in a telephone conversation, defendant VILLEGAS instructed defendant MORENO to buy a car that could be outfitted with a hidden compartment for transporting drugs and drug proceeds.

14. On or about January 7, 2018, in a telephone conversation, defendant VILLEGAS asked a car salesperson about the status of a 2005 BMW X5, which defendant VILLEGAS intended to have defendant PERALTA convert into a trap car.

15. On or about January 9, 2018, using coded language in a telephone conversation, defendant PERALTA advised defendant VILLEGAS that the 2001 BMW X5 defendant MORENO was considering buying had plastic parts and so could not be altered into a trap car.

16. On or about January 9, 2018, using coded language in a telephone conversation, defendant VILLEGAS advised Co-Conspirator 1 that defendant VILLEGAS would ship a crate containing between fifty and sixty pounds of marijuana to Orlando, Florida, where defendant ORTIZ would pick it up and deliver it to Co-Conspirator 1 in Jacksonville, Florida.

17. On or about January 9, 2018, using coded language in a telephone conversation, defendant VILLEGAS instructed Co-Conspirator

1 to rent a home with a garage for the purpose of receiving the crate of marijuana.

18. On or about January 9, 2018, defendant VILLEGAS advised an unindicted co-conspirator that he usually deposited drug proceeds into his bank account in payments less than $9,000, so as to evade detection by law enforcement.

19. On or about January 9, 2018, using coded language in a telephone conversation, defendant RIZO agreed to buy eight kilograms of cocaine from defendant VILLEGAS's cocaine supplier.

20. On or about January 9, 2018, using coded language in a telephone conversation, defendant VILLEGAS agreed to provide a location for defendant RIZO to inspect the quality of the cocaine from his cocaine supplier.

21. On or about January 9, 2018, using coded language in a telephone conversation, defendant RIZO informed defendant VILLEGAS that defendant MARIA PONCE would inspect and buy the eight kilograms of cocaine.

22. On or about January 9, 2018, using coded language in telephone conversations, defendant MARIA PONCE and defendant VILLEGAS arranged to meet so that defendant MARIA PONCE could inspect and purchase the eight kilograms of cocaine.

23. On or about January 9, 2018, using coded language in telephone conversations, defendant VILLEGAS also agreed to inspect the cocaine's quality on behalf of defendant RIZO.

24. On or about January 9, 2018, defendant VILLEGAS tested the quality of the cocaine that defendant RIZO wanted to buy.

25. On or about January 9, 2018, using coded language in a telephone conversation, defendant VILLEGAS advised defendant RIZO

that he had inspected the eight kilograms of cocaine and it was of high quality.

26. On or about January 9, 2018, defendant MARIA PONCE bought eight kilograms of cocaine from defendant VILEGAS's cocaine supplier, at a meeting arranged by defendant VILLEGAS.

27. On or about January 9, 2018, using coded language in a telephone conversation, defendant VILLEGAS instructed defendant RIZO to inspect the eight kilograms of cocaine bought by defendant MARIA PONCE, so that if he did not like the product, defendant VILLEGAS could timely inform his cocaine supplier.

28. On or about January 9, 2018, using coded language in a telephone conversation, defendant VILLEGAS agreed to obtain two kilograms of cocaine for defendant RIZO's colleague, "Locochon."

29. On or about January 10, 2018, using coded language in a telephone conversation, defendant MARIA PONCE complained about the quality of the cocaine defendant VILLEGAS sold her and defendant RIZO, to which defendant VILLEGAS offered to take the cocaine from them and return it to his cocaine supplier.

30. On or about January 10, 2018, defendant MARIA PONCE returned the eight kilograms of cocaine to defendant VILLEGAS.

31. On or about January 10, 2018, defendant VILLEGAS returned five kilograms of the cocaine from defendant MARIA PONCE to his cocaine supplier.

32. On or about January 10, 2018, defendant VILLEGAS bought thirteen kilograms of cocaine (including three kilograms of the cocaine returned by defendant MARIA PONCE) from his cocaine supplier.

33. On or about January 10, 2018, using coded language in a telephone conversation, defendant VILLEGAS told defendant MARIA PONCE

that he had returned five of the eight kilograms of the cocaine, kept the other three, and bought ten more, meaning he now had thirteen kilograms of cocaine.

34. On or about January 11, 2018, using coded language in a telephone conversation, defendant MARIA PONCE asked to buy additional cocaine from defendant VILLEGAS, to which defendant VILLEGAS agreed to do if defendants MARIA PONCE and RIZO tested the cocaine's quality first.

35. On or about January 11, 2018, using coded language in a telephone conversation, defendant VILLEGAS arranged a location for defendants MARIA PONCE and RIZO to test and buy the cocaine.

36. On or about January 11, 2018, using coded language in a telephone conversation, defendant VILLEGAS asked defendant PERALTA about the status of the trap cars' construction and instructed defendant PERALTA to build the hidden compartments well.

37. On or about January 11, 2018, using coded language in a telephone conversation, defendant VILLEGAS asked defendant PERALTA to help him access cocaine that was trapped because of a stripped screw.

38. On or about January 11, 2018, defendant PERALTA brought tools to the location of defendant VILLEGAS's drug transaction with defendants RIZO and MARIA PONCE, in order to help defendant VILLEGAS access the cocaine.

39. On or about January 11, 2018, defendant VILLEGAS sold defendants RIZO and MARIA PONCE approximately 4,996 grams of a mixture and substance containing a detectable amount of cocaine.

40. On or about January 11, 2018, defendant MARIA PONCE transported approximately 4,996 grams of a mixture and substance containing a detectable amount of cocaine in her car, while defendant

RIZO followed her in another car, so as to detect law enforcement and protect the drugs from theft.

41. On or about January 11, 2018, defendant MARIA PONCE and defendant RIZO, each aiding and abetting the other, possessed with intent to distribute approximately 4,996 grams of a mixture and substance containing a detectable amount of cocaine.

42. On or about January 11, 2018, using coded language in a telephone conversation, defendant MORENO advised defendant VILLEGAS that he had bought a 2005 BMW X5 and its title and registration were in the name of a person without a criminal record.

43. On or about January 11, 2018, using coded language in a telephone conversation, defendant VILLEGAS directed defendant MORENO to deliver the 2005 BMW X5 to defendant PERALTA so that defendant PERALTA could convert it into a trap car.

44. On or about January 11, 2018, defendant ORTIZ delivered two crates containing approximately 24,023 grams of marijuana and approximately 104.93 grams of hashish oil containing tetrahydrocannabinol to Land Air Express in Los Angeles, California, for shipment to Orlando, Florida.

45. On or about January 15, 2018, defendant ORTIZ flew from Los Angeles, California, to Orlando, Florida, for the purpose of distributing the marijuana and hashish oil containing tetrahydrocannabinol to Co-Conspirator 1.

46. On or about January 16, 2018, defendant ORTIZ and Co-Conspirator 2 picked up the crates containing marijuana and hashish oil containing tetrahydrocannabinol from Land Air Express in Orlando, Florida.

47. On or about January 16, 2018, defendant ORTIZ transported the crates containing marijuana and hashish oil containing tetrahydrocannabinol in his car, while Co-Conspirator 2 followed him in another car, so as to detect law enforcement and protect the drugs from theft.

48. On or about January 16, 2018, defendant ORTIZ and Co-Conspirator 2, each aiding and abetting the other, distributed to Co-Conspirator 1 two crates containing approximately 24,923 grams of marijuana and approximately 104.93 grams of hashish oil containing tetrahydrocannabinol.

49. On or about January 16, 2018, Co-Conspirator 1 knowingly and intentionally possessed with intent to distribute approximately 24,923 grams of marijuana and approximately 104.93 grams of hashish oil containing tetrahydrocannabinol.

50. On or about March 10, 2018, using coded language in a telephone conversation, defendant VILLEGAS instructed defendant MORENO to drive trap cars to Mexico with Courier 1 and Courier 2, in order to use the cars' hidden compartments to transport drugs into the United States.

51. On or about March 13, 2018, using coded language in a telephone conversation, defendant MORENO advised defendant VILLEGAS that he was would deliver a trap car to defendant ORTIZ.

52. On or about March 13, 2018, using coded language in a telephone conversation, defendant VILLEGAS instructed defendant MORENO to pick up the trap cars.

53. On or about March 13, 2018, using coded language in a telephone conversation, defendant VILLEGAS told defendant MORENO that

he, Courier 1, and Courier 2 might need to drive the trap cars to Mexico on March 18, 2018.

54. On or about March 19, 2018, using coded language in a telephone conversation, defendant MORENO advised defendant VILLEGAS that defendant MORENO and the trap cars were in Tijuana, Mexico, and drugs had been placed in the cars' hidden compartments.

55. On or about March 19, 2018, using coded language in a telephone conversation, defendant VILLEGAS confirmed that defendant MORENO, Courier 1, and Courier 2 were awaiting his permission to drive the drug-filled trap cars into the United States.

56. On or about March 20, 2018, defendant MORENO, Courier 1, and Courier 2 drove the trap cars and the drugs in their hidden compartments across the border from Mexico into the United States.

57. On or about March 20, 2018, using coded language in a telephone conversation, defendant VILLEGAS chastised defendant MORENO for not advising him when the trap cars and their drugs had arrived in Los Angeles without being detected by law enforcement.

58. On or about April 27, 2018, Courier 1 attempted to transport approximately three kilograms of heroin and approximately two kilograms of cocaine from Mexico into the United States, by hiding the drugs in a trap car's hidden compartment as he crossed through the border.

59. On or about April 27, 2018, Courier 2 attempted to transport approximately 3,979 grams of a mixture and substance containing a detectable amount of cocaine from Mexico into the United States, by hiding the drugs in a trap car's hidden compartment as he crossed through the border.

60. On or about June 25, 2018, using coded language in a telephone conversation, defendant PERALTA advised defendant VILLEGAS that he could build hidden compartments in Nissan Versa Hatchback Models manufactured between 2007 and 2012.

61. On or about June 25, 2018, and June 26, 2018, defendants VILLEGAS and MORENO visited car dealerships in South Gate, Downey, and Van Nuys, in order to buy a Nissan hatchback that defendant PERALTA could convert into a trap car.

62. On or about June 26, 2018, using coded language in a telephone conversation, defendant VILLEGAS advised defendant PERALTA that he was bringing him a Nissan hatchback to convert into a trap car.

63. On or about June 26, 2018, using coded language in a telephone conversation, defendant PERALTA advised defendant VILLEAS that he needed to buy materials to convert the Nissan hatchback into a trap car, and defendant VILLEGAS instructed defendant PERALTA to do so.

64. On or about June 27, 2018, defendant MORENO registered the Nissan hatchback in his name.

65. On or about July 1, 2018, using coded language in a telephone conversation, defendant MORENO coordinated with an unindicted co-conspirator to inspect the quality of cocaine for purchase.

66. On or about July 2, 2018, defendants VILLEGAS and MORENO met with an unindicted co-conspirator to inspect the quality of his cocaine, but defendants VILLEGAS and MORENO did not buy the cocaine because a price could not be agreed upon.

67. On or about July 5, 2018, defendant VILLEGAS collected $71,560 in drug proceeds from an unindicted co-conspirator.

68. On or about July 8, 2018, using coded language in a telephone conversation, defendant MORENO arranged to deliver $21,000 in drug proceeds to an unindicted co-conspirator.

69. On or about July 9, 2018, using coded language in a telephone conversation, defendant VILLEGAS advised an unindicted co-conspirator that he suspected law enforcement was investigating him.

70. On or about July 10, 2018, using coded language in a telephone conversation, defendant VILLEGAS coordinated with two unindicted co-conspirators to pick up cocaine in Bell Gardens, California.

71. On or about July 10, 2018, defendants VILLEGAS and MILTON PONCE, each aiding and abetting the other, possessed with intent to distribute approximately 6,018 grams of a mixture and substance containing a detectable amount of cocaine.

72. On or about July 10, 2018, using coded language in a telephone conversation, defendant VILLEGAS advised an unindicted co-conspirator that he planned to discontinue using his cell phone in order to evade detection by law enforcement.

73. On or about July 11, 2018, using coded language in a telephone conversation, defendant PERALTA advised an unindicted co-conspirator that law enforcement had seized fifteen kilograms of cocaine from defendants VILLEGAS and MILTON PONCE the day before.

74. On or about July 11, 2018, using coded language in a telephone conversation, defendant PERALTA instructed an unindicted co-conspirator to pay drug proceeds owed to defendant VILLEGAS.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)]

[DEFENDANT VILLEGAS]

On or about January 11, 2018, in Los Angeles County, within the Central District of California, defendant JOEL ANTONIO VILLEGAS, also known as "Junior," knowingly and intentionally distributed at least 500 grams, that is, approximately 4,996 grams, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii); 18 U.S.C. § 2(a)]

[DEFENDANTS RIZO AND MARIA PONCE]

On or about January 11, 2018, in Los Angeles County, within the Central District of California, defendants RONNY RIZO, also known as ("aka") "Rodney," and MARIA ESTHER PONCE, aka "Mary," each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 4,996 grams, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); 18 U.S.C. § 2(a)]

[DEFENDANTS VILLEGAS AND MILTON PONCE]

On or about July 10, 2018, in Los Angeles County, within the Central District of California, defendants JOEL ANTONIO VILLEGAS, also known as "Junior," and MILTON AMILCAR PONCE, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 6,018 grams, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

FORFEITURE ALLEGATION

[21 U.S.C. § 853]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in Counts One through Four of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense, including but not limited to $71,560 in U.S. currency seized from defendant VILLEGAS on July 5, 2018;

(b) All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3. Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the

jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/

Foreperson

NICOLA T. HANNA
United States Attorney

Brandon Fox

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

CAROL A. CHEN
Assistant United States Attorney
Chief, International Narcotics, Money Laundering, and Racketeering Section

SHAWN J. NELSON
Assistant United States Attorney
Deputy Chief, International Narcotics, Money Laundering, and Racketeering Section

A. CARLEY PALMER
Assistant United States Attorney
International Narcotics, Money Laundering, and Racketeering Section